UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PAUL PECK *et al.*,

    Plaintiffs,

v.

ANTHONY CHOPP *et al.*,

    Defendants.

_____/

Case No. 1:09-cv-621

HON. JANET T. NEFF

## **OPINION AND ORDER**

Plaintiffs, former employees of Northwest Tool & Die Company, Inc. ("Northwest Tool & Die"), filed this three-count complaint against Northwest Tool & Die and six individuals. Plaintiffs claim federal question jurisdiction, 28 U.S.C. § 1331, inasmuch as Counts 2 and 3 of their complaint allege violations of the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001 *et seq.*, and supplemental jurisdiction over the state-law claim alleged in Count 1, 28 U.S.C. § 1367. Pending before the Court is defendants' Motion to Dismiss (Dkt 32) under FED. R. CIV. P. 12(b)(1) for lack of subject matter jurisdiction, or alternatively under Rule 12(b)(6) for failure to state a claim. For the reasons that follow, the Court determines that Counts 2 and 3 are properly dismissed and that supplemental jurisdiction over Count 1 is properly declined.

### **I. BACKGROUND**

Plaintiffs Paul Peck and Richard Brown were employed by Northwest Tool & Die, a Grand Rapids automobile supplier that filed for bankruptcy protection in November 2005 (Compl. ¶¶ 1-2, 9, 31-32). Northwest Tool & Die was the plan sponsor for its own Employee Stock Ownership Plan

("ESOP") (*id.* ¶ 9). As part of the bankruptcy decree, the ESOP became the sole owner of the company's stock (*id.* ¶ 17). Each plaintiff owns ESOP shares (*id.* ¶¶ 1-2).

Plaintiffs allege that defendant Anthony Chopp, who served as Northwest Tool & Die's Chief Executive Officer and Chairman of the Board of Directors before the company's bankruptcy, entered into discussions in late 2007 with George Hoffmeister about a potential sale of Northwest Tool & Die to Hoffmeister or an entity/entities affiliated with Hoffmeister (Compl. ¶ 19). However, for reasons not stated in the complaint, Chopp and Hoffmeister did not reach an agreement about the sale of the company (*id.* ¶ 27). Plaintiffs allege that "while the Hoffmeister discussions were ongoing, Chopp and the Board spent significant amounts of company money and credit and increased Northwest's liabilities" (*id.* ¶ 28). Plaintiffs allege that by November 2008, Northwest Tool & Die's lender sought to foreclose on its loans, and Chopp entered into "hurried negotiations" with Riviera Tool & Die relating to the sale of the majority of the Northwest Tool & Die business, including company contracts and computer software, while he entered into negotiations to sell the plant, physical facilities, and equipment to another company (*id.* ¶ 30-31).

On July 8, 2009, plaintiffs, on behalf of themselves and others similarly situated, filed suit against Northwest Tool & Die and Chopp as well as Jeffrey Shunk, Patricia McCullough, and Joseph Minasola, members of the Board of Directors and ESOP trustees; Peter Huisman, a member of the Board of Directors; and Donald Mekkes, an ESOP Trustee. The parties subsequently stipulated to a dismissal of defendant Mekkes (Dkt 30).

Plaintiffs allege that defendants failed to undertake steps to maximize the value of their shares and that their ESOP shares significantly dropped in value as a result of the manner in which the sale of the business was crafted (Compl. ¶¶ 33, 62). Specifically, in Count 1, "Breach of

2

Fiduciary Duties against the Director Defendants," plaintiffs allege that the members of the Board of Directors breached their fiduciary duties to plaintiffs in the following five ways:

    a. Failing to follow a fair and reasonable process to consider proposals and purchase offers from groups other than Hoffmeister.

    b. Extending the no-shop agreement with Hoffmeister even after they knew there were potential competing bids for the company.

    c. Failing to disclose the terms of any potential purchase offers from Hoffmeister to the shareholders.

    d. Failing to act in the best interests of the shareholders by refusing to open the sales process for bids.

    e. Refusing to review overtures for purchase of the Company from other groups or individuals.

Compl. ¶ 63.

In Count 2, "Breach of Fiduciary Duties under ERISA," plaintiffs allege that defendants breached their duties under ERISA to the plan participants in the same five ways recited in Count 1 (Compl. ¶ 71). In Count 3, "Co-Fiduciary Liability under ERISA," plaintiffs allege that "in addition to direct breaches of their own fiduciary duties, Defendants are also liable as co-fiduciaries under ERISA with respect to the violations described herein, since they knowingly participated in their co-fiduciaries' breaches, knowingly undertook to conceal those breaches, enabled their co-fiduciaries to commit the breaches, and/or failed to make reasonable efforts to remedy the breaches" (*id.* ¶ 77).

On August 24, 2009, defendants moved for an extension of time to answer plaintiffs' complaint and joined in a Pre-Motion Conference request, proposing to file a dispositive motion challenging this Court's subject matter jurisdiction (Dkt 12). Defendants asserted that plaintiffs

3

attempted to create federal-court jurisdiction for a state-law dispute by adding the two claims under ERISA, an assertion plaintiffs denied.

Following a Pre-Motion Conference on October 13, 2009, the Court issued a briefing schedule, permitting defendants to file a Motion to Dismiss (Dkt 19). The parties filed their motion papers on December 23, 2009 (Dkts 32-35). Having fully considered the parties' motion briefs, the Court determines that oral argument is unnecessary. *See* W.D. Mich. LCivR 7.2(d).

## II. ANALYSIS

### A. *Motion Standard*

Defendants filed their Motion to Dismiss under FED. R. CIV. P. 12(b)(1) for lack of subject matter jurisdiction, or alternatively under Rule 12(b)(6) for failure to state a claim. Their proposal to proceed under FED. R. CIV. P. 12(b)(1) is misplaced. "Generally speaking, Rule 12(b)(6) permits a defendant to seek relief on the ground that a cause of action fails as a matter of law, regardless of whether the plaintiff's factual allegations are true or not, while Rule 12(b)(1) permits a defendant to seek relief on the ground that the court has no subject-matter jurisdiction over the dispute." *Winnett v. Caterpillar, Inc.,* 553 F.3d 1000, 1005 (6th Cir. 2009).

This Court clearly has federal question jurisdiction over ERISA claims. 28 U.S.C. § 1331 provides district courts with original jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." Defendants' business-decision argument, discussed in detail *infra*, instead directs this Court to decide whether defendants were wearing "the fiduciary hat" with respect to the particular activities alleged. In other words, the appropriate inquiry is whether plaintiffs have stated a cognizable claim under ERISA, and therefore the proper vehicle is a Rule 12(b)(6) motion.

4

In deciding a motion to dismiss for failure to state a claim under FED. R. CIV. P. 12(b)(6), the court must treat all well-pleaded allegations in the complaint as true and draw all reasonable inferences from those allegations in favor of the nonmoving party. *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross and Blue Shield,* 552 F.3d 430, 434 (6th Cir. 2008). The complaint must present "enough facts to state a claim to relief that is plausible on its face." *Bishop v. Lucent Technologies, Inc.,* 520 F.3d 516, 519 (6th Cir. 2008) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557, 570 (2007)). *See also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (stating that to survive dismissal, the complaint must contain enough facts to establish a "plausible," as opposed to merely a "possible," entitlement to relief).

### B. *Discussion*

An ESOP is an ERISA plan that invests primarily in "qualifying employer securities," which typically are shares of stock in the employer creating the plan. 29 U.S.C. § 1107(d)(6)(A). An ESOP functions both as an employee retirement benefit plan and a technique of corporate finance to encourage employee ownership. *Kuper v. Iovenko,* 66 F.3d 1447, 1457 (6th Cir. 1995). ESOPs are not designed to guarantee retirement benefits, and they place employee retirement assets at much greater risk than the typical diversified ERISA plan. *Id.*

ERISA provides that plan fiduciaries have certain obligations to plan participants. Section 1104 governs fiduciary duties, providing in relevant part the following:

> [A] fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and –
>
>     (A)    for the exclusive purpose of:
>
>         (i)    providing benefits to participants and their beneficiaries; and
>
>         (ii)    defraying reasonable expenses of administering the plan;

      (B)      with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.

29 U.S.C. § 1104(a)(1).

The above fiduciary requirements imposed under ERISA have been delineated in the Sixth Circuit and elsewhere as having three components: (1) an ERISA fiduciary must have a "duty of loyalty;" (2) an ERISA fiduciary must act with care, skill, prudence, and diligence; and (3) an ERISA fiduciary must act "for the exclusive purpose" of providing benefits to plan beneficiaries. *Berlin v. Michigan Bell Tele. Co.,* 858 F.2d 1154, 1162 (6th Cir. 1988).

"To state a claim for breach of fiduciary duty under ERISA, a plaintiff must allege that: (1) the defendant was a fiduciary of an ERISA plan who, (2) acting within his capacity as a fiduciary, (3) engaged in conduct constituting a breach of his fiduciary duty." *In re Cardinal Health ERISA Litig.,* 424 F. Supp. 2d 1002, 1016 (S.D. Ohio 2006) (citing 29 U.S.C. § 1109 and *In re AOL Time Warner, Inc. Sec. & ERISA Litig.,* No. MDL 1500, 02 Civ 8853 (SWK), 2005 WL 563166, at *2 (S.D.N.Y. Mar. 10, 2005)). Defendants' motion implicates the second element, whether they were acting within their capacities as fiduciaries when engaged in the conduct alleged by plaintiffs.

Employers who are also plan sponsors, as in the case at bar, "wear two hats: one as a fiduciary in administering or managing the plan for the benefit of participants and the other as employer in performing settlor functions such as establishing, funding, amending, and terminating the trust." *Hunter v. Caliber Sys., Inc.,* 220 F.3d 702, 718 (6th Cir. 2000) (citing *Akers v. Palmer,* 71 F.3d 226, 231 (6th Cir. 1995)). The fiduciary obligations imposed by ERISA are implicated only when an employer acts in its fiduciary capacity. *Id.* "[P]urely business decisions by an ERISA employer are not governed by section 1104's fiduciary standards." *Kuper,* 66 F.3d at 1456 (quoting

*Berlin,* 858 F.2d at 1163). "ERISA is designed to accomplish many worthwhile objectives, but the regulation of purely corporate behavior is not one of them." *Akers,* 71 F.3d at 229.

A court must examine the conduct at issue to determine whether it constitutes "management" or "administration" of the plan, giving rise to fiduciary concerns, or merely a business decision that has an effect on an ERISA plan not subject to fiduciary standards. *Hunter,* 220 F.3d at 718 (quoting *Sengpiel v. B.F. Goodrich Co.,* 156 F.3d 660, 665 (6th Cir. 1998)). "[T]he fact that an action taken by an employer to implement a business decision may ultimately affect the security of employees' welfare benefits does not automatically render the action subject to ERISA's fiduciary duties." *Id.* "[O]nly discretionary acts of plan management or administration, or those acts designed to carry out the very purposes of the plan, are subject to ERISA's fiduciary duties." *Id.* (quoting *Akers,* 71 F.3d at 231).

It is well established that the decision to sell corporate assets is a business decision not regulated by ERISA fiduciary duties. *See Flanigan v. Gen. Elec. Co.*, 242 F.3d 78, 88 (2d Cir. 2001) (holding employer's decision to spin-off the division along with its pension plan was, "at its core," a corporate business decision, and not one of a plan administrator triggering general fiduciary duties under ERISA); *Hunter,* 220 F.3d at 719 (holding that the transfer of assets from one plan to another was not a decision subject to ERISA's fiduciary obligations); *Ames v. Am. Nat'l Can Co.,* 170 F.3d 751, 757 (7th Cir. 1999) (holding employer's decision regarding how to structure plan was not a fiduciary decision); *Sys. Council EM-3 v. AT&T Corp.,* 159 F.3d 1376, 1379-80 (D.C. Cir. 1998) (holding employer's allocation of a restructured plan's excess was not a fiduciary decision); *Blaw Knox Retirement Plan v. White Consol. Indus., Inc.*, 998 F.2d 1185, 1189 (3d Cir. 1993) (holding decision to sell off a division and transfer plan assets was not a fiduciary decision).

The parties in this case do not dispute that purely business decisions by an ERISA employer, such as the sale of corporate assets, are not governed by § 1104's fiduciary standards (Mot. at 2; Resp. at 8). Defendants argue that their decision to sell corporate assets is instead regulated by state corporation law and is not a matter of plan administration or of duties imposed by the ESOP (Mot. at 3). Plaintiffs respond that the basis of their complaint is not the business decision to sell the company assets, but the "flawed process" by which the sale took place, including a refusal by defendants to entertain reasonable offers from all potential purchasers, their failure to avoid conflicts of interest during the negotiation and sales process, and a failure to inform the ESOP Plan participants of the status and terms of the sale (Resp. at 2-3, 9). Plaintiffs also argue that while business decisions themselves do not carry the ERISA fiduciary standards, the communications and representations made to plan participants before such a decision are fiduciary in nature (*id.* at 9). In reply, defendants argue that the "process" by which they sold the corporate assets is as much a business decision as the decision to sell the assets itself, and that the "process" is even further away from an ERISA plan decision that would be governed by ERISA duties (Reply at 2).

The case law supports defendants' argument. In *Sengpiel v. B.F. Goodrich Co.,* 156 F.3d 660, 666 (6th Cir. 1998), the plaintiffs conceded that the employer's decision to spin off its tire division and its related decision to divide its welfare benefit plan into four smaller plans did not constitute fiduciary acts. They instead argued that the company's selection of the affected retirees and their subsequent assignment to the transferred plans were discretionary acts of plan management or administration subject to ERISA's fiduciary standards. *Id.* The Sixth Circuit Court of Appeals held that "[i]t is true that certain actions taken in the course of implementing a corporate business decision may be subject to ERISA's fiduciary standards even though the employer's decision itself

8

is not," noting, by example, that an employer acts in a fiduciary capacity when it intentionally misleads employees about the consequences of transferring their welfare benefit plans to a new entity created by a spin-off. *Id.*

However, the Sixth Circuit instructed that "the fact that an action taken by an employer to implement a business decision may ultimately affect the security of employees' welfare benefits does not automatically render the action subject to ERISA's fiduciary duties. To adopt such a rule would, in effect, erode the well-established principle that employers are free to make decisions that modify, amend, or even terminate their employees' unvested welfare benefits." *Sengpiel,* 156 F.3d at 666. The Sixth Circuit held that the actions undertaken by the employer to implement its business decision were simply not the kind of plan management or administration that trigger ERISA's fiduciary duties. *Id.* (citing *Sys. Council, EM-3 v. AT&T,* 972 F. Supp. 21, 32 (D. D.C. 1997) (holding that employer's "decisions to restructure itself and to spin-off its pension and welfare plans as part of the restructuring ... and the actions necessary to implement them are not subject to ERISA's fiduciary standards").

The cases consolidated in *Hunter* also arose out of a spin-off of a subsidiary company by its former parent company, a decision that resulted in the precipitous decline in the price of the parent company stock. 220 F.3d at 706. The plaintiffs, former employees of the subsidiary, alleged in their complaints that in connection with the spinoff, the companies committed various breaches of fiduciary duty and other violations under ERISA, causing the plaintiffs to lose substantial amounts in their retirement accounts. *Id.* The plaintiffs conceded that the decision to transfer assets to the 401(k) plan was a business decision not subject to ERISA's fiduciary requirements; however, the plaintiffs argued that the employer breached its fiduciary duties in several ways "in the course of

9

implementing its business decision." *Id.* at 718. The Sixth Circuit Court of Appeals acknowledged that while the employer certainly exercised some degree of discretion in transferring the stock and determining its staffing needs for completing the transfer, "it is not the exercise of discretion alone that makes an employer's action subject to fiduciary standards." *Id.* at 718-20 (quoting *Sengpiel,* 156 F.3d at 666). The Sixth Circuit emphasized that "the exercise of discretion must relate to plan management or administration." *Id.* at 719-20.

Here, too, the allegations in plaintiffs' Count 2 concerning defendants' alleged failure to consider other proposals and purchase offers, extend the no-shop agreement with Hoffmeister, disclose the terms of potential purchase offers from Hoffmeister to the shareholders, open the sales process for bids, or review overtures for purchase from others, concern actions or omissions by defendants in the course of implementing their business decision to sell the assets of Northwest Tool & Die. The actions or omissions about which plaintiffs complain do not concern defendants' exercise of discretion over matters related to plan management or administration.

Although the business decision to sell and the actions taken to implement the decision affected the value of plaintiffs' ESOP shares, that effect does not render defendants' actions subject to ERISA's fiduciary duties. "[T]he sale of a business or portion of a business does not impose a fiduciary duty on an employer to guarantee future, nonvested benefits." *Dougherty v. Chrysler Motors Corp.,* 840 F.2d 2, 3 (6th Cir. 1988). This rule applies with "equal force" when the ERISA plan is an ESOP. *Martin v. Feilen*, 965 F.2d 660, 666 (8th Cir. 1992) (observing that "[v]irtually all of an employer's significant business decisions affect the value of its stock, and therefore the benefits that ESOP plan participants will ultimately receive").

In sum, plaintiffs' allegations in Count 2 are insufficient to state a plausible claim for relief under ERISA because the actions about which plaintiffs complain are not fiduciary acts under ERISA. Because plaintiffs' Count 2 fails to state a claim under ERISA on the underlying breach of fiduciary duty claims, the Court finds that plaintiff's Count 3 also fails to survive defendants' motion. Liability of a co-fiduciary presupposes liability of a fiduciary. 29 U.S.C. § 1105(a). Therefore, Counts 2 and 3 are properly dismissed under FED. R. CIV. P. 12(b)(6) for failure to state a claim.

### III. CONCLUSION

The Court grants defendants' motion to dismiss Counts 2 and 3 for failure to state a claim. Pursuant to its discretionary authority under 28 U.S.C. § 1367(c)(3), the Court also declines supplemental jurisdiction over the state-law claim in Count 1. Count 1 is therefore dismissed without prejudice. As the Court's decision resolves all pending claims, a Judgment will be entered consistent with this Opinion and Order. *See* FED. R. CIV. P. 58. Accordingly:

**IT IS HEREBY ORDERED** that defendants' Motion to Dismiss (Dkt 32) is GRANTED.

**IT IS FURTHER ORDERED** that the Court declines to exercise supplemental jurisdiction over plaintiffs' state-law claim in Count 1, and therefore, Count 1 is DISMISSED WITHOUT PREJUDICE.

DATED: June 14, 2010                    /s/ Janet T. Neff
                                                                        JANET T. NEFF
                                                                       United States District Judge